

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00093-CV

**IN THE INTEREST OF D.B.B.**, C.L.B., and D.L.B., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA00420
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: June 5, 2019

AFFIRMED

Appellants A.R. (Mom) and D.B. (Dad) appeal the trial court's order terminating their parental rights to their children D.B.B., C.L.B., and D.L.B.[i]  Each parent asserts the trial court could not have found by clear and convincing evidence that terminating their respective parental rights is in the children's best interests.

Because the evidence is legally and factually sufficient to support the trial court's findings, we affirm the trial court's order.

### BACKGROUND

Mom and Dad are the parents of D.B.B., C.L.B., and D.L.B.  In February 2017, the Department received a referral alleging negligent supervision of the children.  The Department

---

[i] To protect the minors' identities, we refer to the parents and the children using aliases.  *See* TEX. R. APP. P. 9.8.

found Mom and the children staying at a motel. Law enforcement arrested Mom on three open warrants for prostitution, and the Department obtained temporary conservatorship of the children. After several status hearings, a granted motion for mistrial, and an extension of the automatic dismissal date, the Department moved to terminate the parents' rights. At the one-day bench trial, the parents' rights to their children were terminated.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

## BASES FOR TERMINATION

### A. Courses of Parental Conduct

The trial court found by clear and convincing evidence that Mom's conduct and Dad's conduct each met the grounds stated in paragraphs (D), (E), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Neither Mom nor Dad appeals the trial court's statutory grounds findings.

### B. Best Interests of the Children

Instead, Mom and Dad challenge the sufficiency of the evidence supporting the trial court's findings that terminating their respective parental rights is in the children's best interests. *See id.* § 161.001(b)(2). The Family Code[5] and *Holley*[6] factors for best interests of the children are also well known. With the statutory and common law factors in mind, we examine the evidence.

### C. Evidence of Best Interests of the Children

At the January 17, 2019 bench trial, the trial court heard testimony from Mom, Mom's mother, Mom's substance abuse counselor, Dad, Dad's mother, the two youngest children's foster mother, and the Department case worker; it also received recommendations from the children's attorney ad litem.

The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). Some of the relevant testimony is summarized below.

### 1. Mom's Course of Conduct

Mom has depression and issues with anger management and drug abuse. Dad testified that Mom tried to run him over with a car, she threw things at him, and she had tried to stab, bite, kick, scratch, and punch him. Mom admitted using marijuana for years to cope with her emotional pain. The children, who are too young to attend school, lived with Mom, and she did not have stable housing. When the Department located Mom, she was arrested for three outstanding warrants for prostitution. During the pendency of this case, Mom was arrested twice: once for possession of methamphetamine with intent to deliver and once on a new prostitution charge.

Mom's service plan included individual therapy, domestic violence and parenting classes, and drug testing and treatment. She began, but did not complete, her domestic violence class. She engaged in individual counseling for four months, but she stopped engaging and was discharged for failure to attend the counseling. She skipped most of her drug tests; some tests were positive for marijuana and methamphetamine. She missed fifteen visits with her children, and she did not provide money or necessities for them.

Mom did not complete her service plan, and she has not successfully addressed her issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (C), (D), (H)).

### 2. Dad's Course of Conduct

Dad admitted he has a "very long criminal history." He has been arrested for misdemeanor and felony drug charges, three domestic violence assaults, theft, burglary of a building, and evading arrest. He was incarcerated at least once during the pendency of this case, and he was

arrested a month before trial for possession of a controlled substance. Dad was also incarcerated for assaulting Mom. Mom testified that during their relationship Dad had kicked holes in the wall, and he struck her many times including with items such as shoes, knives, and phones.

Dad's service plan included individual therapy, domestic violence and parenting classes, and drug testing and treatment. He completed the parenting and domestic violence classes; he started his individual therapy, but he did not complete it. After he completed the first drug treatment course, he tested positive for drug use, and he was put into drug treatment again. After his second course, he submitted to some drug tests but skipped thirteen others. The Department argued Dad's skipped tests and drug-related Facebook posts were evidence of ongoing drug use.

Dad did not complete his service plan, and he has not overcome his drug abuse. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (C), (D), (H)).

### 3. *Mom's Plan to Care for Children*

Mom is living with a friend who has an open case with the Department for concerns of methamphetamine and marijuana use in the home. Mom has not provided proof of current employment, and about one month before trial, she was again arrested for prostitution. Mom has not shown she can provide a safe, stable home or financial support for the children or that she can meet the children's basic needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (F), (H)).

### 4. *Dad's Plan to Care for the Children*

Dad has not provided proof of stable employment. Dad admitted that, because of Mom's anger issues, his girlfriend with whom he is living "probably wouldn't feel comfortable" having the children live in their home. He has missed many visits to see the children, and he has not provided for them. Dad has not shown a safe and stable home, stable employment, or how he can

meet the children's physical and emotional needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (F), (H)).

### 5. *Placement for D.B.B.*

When he was very young, D.B.B. was placed with his paternal grandmother under a safety plan because of domestic violence in Mom and Dad's home. D.B.B. was later placed in a foster home, but he is now back with his paternal grandmother B.B. D.B.B. is doing well, and B.B. and her husband of forty years are willing to adopt D.B.B. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (13); *Holley*, 544 S.W.2d at 371–72 (factors (D), (F), (G)).

### 6. *Placement for C.L.B., D.L.B.*

C.L.B. and D.L.B. are progressing and happy in their foster home. The foster parents are bonded to the children, and the children are bonded to their foster parents. The foster parents get along very well with the paternal and maternal grandmothers; they talk daily and spend some holidays and birthdays together. The foster family wants to adopt C.L.B. and D.L.B., and both grandmothers, the Department, and the children's ad litem support that plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (13); *Holley*, 544 S.W.2d at 371–72 (factors (D), (F), (G)).

### 7. *Recommendations for Terminating Parental Rights*

The case worker, the paternal grandmother, the maternal grandmother, and the two youngest children's foster mother all agreed that both parents' rights to the children should be terminated; all testified that terminating the parents' rights would be in the children's best interests.

The children's attorney ad litem also agreed that Mom's and Dad's parental rights should be terminated. The Department and the ad litem noted the case has been extended for almost two years—giving the parents more time to improve—but Mom and Dad have failed to make the needed changes in their behaviors.

The Department and ad litem asked the trial court to let the children remain in the homes where they are now thriving and to terminate Mom's and Dad's rights so the children may be adopted and have permanency. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (F), (H)).

Considering all the evidence in the appropriate light for each standard of review, we conclude that the trial court could have formed a firm belief or conviction that terminating Mom's and Dad's parental rights to the children was in each child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

## CONCLUSION

Because, for each parent, the evidence was legally and factually sufficient to support the trial court's finding by clear and convincing evidence (1) of a predicate ground for termination and (2) that termination of the parent's rights is in the best interest of each child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Here, the trial court found one or both parent's conduct met the following criteria or grounds:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [and]

. . . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for

not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1)  the child's age and physical and mental vulnerabilities;

(2)  the frequency and nature of out-of-home placements;

(3)  the magnitude, frequency, and circumstances of the harm to the child;

(4)  whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)  whether the child is fearful of living in or returning to the child's home;

(6)  the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)  whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)  whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)  whether the perpetrator of the harm to the child is identified;

(10)  the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)  the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)  whether the child's family demonstrates adequate parenting skills; . . . and

(13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re S.J.R.-Z.*, 537 S.W.3d 677, 692 (Tex. App.—San Antonio 2017, pet. denied).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A)  the desires of the child;

(B)  the emotional and physical needs of the child now and in the future;

(C)  the emotional and physical danger to the child now and in the future;

(D)  the parental abilities of the individuals seeking custody;

(E)  the programs available to assist these individuals to promote the best interest of the child;

(F)  the plans for the child by these individuals or by the agency seeking custody;

(G)  the stability of the home or proposed placement;

(H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).